**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| **HCI DISTRIBUTION, INC.; and ROCK RIVER MANUFACTURING, INC.,** | **Case No. 8:18-CV-173** |
| **Plaintiff,** | |
| **v.** | **ORDER** |
| **DOUGLAS PETERSON, Nebraska Attorney General; and TONY FULTON, Nebraska Tax Commissioner,** | |
| **Defendants.** | |

Plaintiffs HCI Distribution, Inc. and Rock River Manufacturing, Inc., and Defendants Douglas Peterson and Tony Fulton (collectively the "Parties"), through their respective Counsel of Record, have agreed to a protocol for production of electronically stored information ("ESI") and paper documents in this action. (Filing No. 50.)

The Parties' Stipulation (Filing No. 50) is approved and adopted.

Accordingly,

**IT IS ORDERED**:

I.    **SCOPE**

    **A. General.** The procedures and protocols set forth in this Order shall govern the production of ESI and paper documents in this matter, unless the Parties agree in writing to change them or they are changed by the Court.

    **B. Disputes.** Before filing any discovery motion regarding the production of ESI or paper documents, the Parties shall follow the procedures set forth in the Local Rules and the Court's individual practices for handling discovery disputes, including any issues that arise under this Order or otherwise.

II.    **DEFINITIONS**

    **A.** "Electronically stored information" or "ESI," as used herein, means and refers to computer generated or stored information or data, residing in or on any storage media located on computers, file servers, disks, tape, USB drives, or other real or

virtualized devices or media, as such information is defined in the Federal Rules of Civil Procedure, including Rule 34(a).

**B.** "Document" or "Documents" refers to ESI and paper documents in every form or source in which such ESI or paper document exists or in which you possess or control it, including without limitation computer or electronic files stored on file servers, e-mail servers, work stations, desktops, hard drives, personal digital assistants (PDAs), smartphones (e.g., "Blackberrys," "IPhones," "Droids"), tablets (e.g., iPads) and other mobile electronic devices, or other electronic social or industrial/business web-based media (e.g., Facebook®, Twitter®, LinkedIn® Instagram®, Snapchat®, Cluster); records, data, reports, and queries derived from or residing in applications and databases, data compilations from which information can be derived, converted, or translated into reasonably usable form; legacy media such as CDs, DVDs, magnetic tape, microfiche, as well as audio tapes or recordings, or video tapes or recordings.

**C.** "Native Format" means and refers to the format of ESI in which it was generated and/or as used by the Producing Party in the usual course of its business and in its regularly conducted activities.

**D.** "Media" means an object or device, including but not limited to a disc, tape, computer or other device, whether or not in the Producing Party's physical possession, on which data is or was stored.

**E.** ESI and paper documents are in your "constructive possession, custody, care, or control" if they reside physically or digitally on your premises, and also if they reside at the facilities of or on the servers or other devices of third parties such as "cloud" providers, document storage facilities, back up sites, and other entities with whom you contract to maintain or house your ESI and paper documents.

**F.** "Producing Party" means or refers to a Party in this matter from which production of ESI or paper documents is sought.

**G.** "Requesting Party" means or refers to a Party in this matter seeking production of ESI or paper documents.

**H.** "The Parties" means or refers to all Parties.

## III.     COST CONTAINMENT AND SEARCH PROTOCOL

**A. Search Proposals.** To further contain costs and reduce the volume of ESI that is not relevant to the matter, the Parties agree to follow the process and time frame outlined below for discussing and agreeing upon the use of search criteria, including reasonable search terms; technology assisted review; and date ranges to identify relevant ESI for review and production.

2

The fact that a document has been retrieved by application of agreed upon search criteria shall not prevent any Party from withholding from production such document on the ground that it is not responsive to a document request, that it is privileged, or on the basis of other permissible objections.

Notwithstanding the foregoing, to the extent any Party separately identifies responsive ESI or paper documents not identified by the use of agreed upon search criteria, all such non-privileged documents must be produced, subject to the Parties' objections to discovery requests.

The Parties shall abide by the following schedule:

1. Within 30 days of the signing of this Order, the Plaintiffs shall provide the information detailed in sections (i) through (v) below in relation to productions already made.

2. Within 30 days after the service of subsequent document requests, the Plaintiffs shall provide the information detailed in sections (i) through (v) in relation to each set of document requests.

3. Within 60 days after the service of document requests upon the Defendants, the Parties shall meet and confer to discuss the scope of discovery concerning custodians and sources to be searched, along with search criteria such as search terms and date ranges.

4. Information to be provided:

    i. **Custodians:** An initial list of custodians likely to possess relevant documents and ESI, along with each custodian's job title and a brief summary of his/her primary responsibilities.

    ii. **Search and date criteria:** A list of search terms (including semantic synonyms, code words, acronyms, slang, abbreviations, non-language alphanumeric associational references to relevant ESI, etc.) that the Producing Party proposes to use, and other proposed exclusion criteria (including, but not limited to, date restrictions).

    iii. **Sources:** A list of the sources of ESI that the Producing Party intends to search for responsive ESI, along with a list of other sources that may contain responsive ESI but which the Party does not intend to search because the sources are not reasonably accessible due to undue burden or cost. If a Producing Party contends that it has such sources, the Producing Party shall briefly describe:

      **a.** the general nature of such information (financial, sales, personnel, inventory);

      **b.** the reason(s) why the information is considered not reasonably accessible;

      **c.** The actions and cost required to identify and restore the information deemed not reasonably accessible;

      **d.** If the Requesting Party intends to seek such sources identified as not reasonably accessible, the Parties shall promptly (a) attempt to reach an agreement as to how they will proceed with retrieval and production, or, if an agreement cannot be reached, (b) present the dispute to the Court for resolution pursuant to the Local Rules and the Court's individual practices.

    **iv. Organizational charts.** Any existing organizational charts relating to departments within its organization in which (a) any of the custodians referred to in step (4)(i) above work, or (b) custodians expected to have relevant documents work.

    **v. Search and analytic software:** The Producing Party will identify the software, program or application that it intends to use to search and collect ESI. If the Producing Party intends to use technology assisted review ("TAR"), it must first identify the software and/or vendor that it plans to use and submit a detailed description of the methodology it plans to employ, including statistical benchmarks. The parties will meet and confer to agree upon the procedure to be employed in relation to TAR.

**5.** Within (15) days after each date set forth in subsections (III)(A)(1), (2) and (3) above, the Parties shall begin to meet and confer regarding the lists detailed in subsection (III)(A)(4)(i)-(v) above, as well as any other issues related to the disclosures.

**6.** Within 60 days after each date set forth in subsections (III)(A)(1), (2) and (3), the Parties shall exchange final lists of custodians, search terms, and date ranges.

**7.** A Producing Party that proposes to eliminate search terms initially identified and agreed upon may propose to exclude such terms after conducting the searches and performing statistical sampling, provided, however, that the Producing Party must first provide to the Requesting Party the underlying "hit rate data" (i.e., total number of documents searched,

number of aggregate hits, number of unique hits, etc.) relating to such search terms. The Parties will meet and confer to reach agreement on the exclusion of search terms based on statistical sampling.

8. Disputes regarding custodians, search terms, and date ranges remaining at this time shall be submitted to the court pursuant to the process identified in the Local Rules and the Court's individual practices.

9. This ESI protocol does not address or resolve any other objection to the scope of the Parties' respective discovery requests, and it does not prevent any Party from undertaking searches of its own ESI for any purpose at any time. However, upon locating responsive ESI from such searches that has not yet been produced, the party must reasonably supplement its production and disclose any search criteria that brought forth that responsive ESI.

B. **De-duplication of Production.** De-duplication shall be performed as outlined in Exhibit B, attached.

C. **Cost Shifting.** The Plaintiffs shall bear all costs of producing documents as specified in this Order, and shall waive the right to seek reimbursement or taxing of such costs pursuant to 28 U.S.C. § 1920, or any other state or federal cost-recovery provision.

## IV. PRODUCTION

A. **ESI Production Format.** Production of ESI shall be in accordance with Exhibits A and B, attached, and the following:

1. **Native Format or Alternative Format.** All original documents shall be produced in Native Format unless otherwise indicated by the Requesting Party. A Party may request production of particular original documents in an alternative format, and approval shall not be unreasonably withheld.

2. **Appearance and Content.** No document may be intentionally manipulated to change how the source document would have appeared if printed out without prior agreement between the Parties except as necessary to redact privileged or confidential information.

3. **Electronically Stored Information in Proprietary Database Format.** Where ESI exists in a proprietary database format the Parties shall export from the original database production-worthy information in a format compatible with Microsoft Excel, or the parties will meet and confer to discuss whether queries or reports will satisfy the production request, and if so, the fields that will be queried.

4. **Structured data.** To the extent a response to discovery requires production of ESI contained in a database, in lieu of producing the database, the Parties agree to meet and confer to, discuss which fields are relevant, agree upon a set of queries to be made for discoverable information or upon the sets of data or fields to be included, and generate a report in a reasonably usable and exportable electronic file (e.g., Excel or .csv format).

B. **Family Relationships of Electronic Files.** Parent-child relationships between ESI (e.g., the association between an attachment and its parent e-mail, or a spreadsheet embedded within a word processing document), must be preserved by assigning sequential Bates numbers to all files within a parent-child group, and by providing "BegAttach" and "EndAttach" fields (or the functional equivalent).

C. **Confidentiality of Produced ESI.** If a document is produced subject to a claim that it is protected from disclosure, the word "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" shall be burned electronically on each page of such document. For ESI produced in Native Format, the TIFF placeholder for the native file shall include the designation "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL," or where not produced with a TIFF placeholder, the storage device (e.g., CD, USB, or hard drive) containing such native ESI data shall be labeled with the designation "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL.

D. **Third-Party Software.** To the extent ESI produced pursuant to this Order cannot be rendered or viewed without the use of proprietary third-party software, the Parties shall cooperate and seek to attempt to minimize any expense or burden associated with production of such ESI. The Parties shall meet and confer to address obtaining access to any such software and operating manuals which are the property of a third party. The Producing Party will not be under any obligation to produce commercially available third-party software or proprietary manuals to the Requesting Party.

E. **Data Maintained by a Third-Party.** To the extent ESI produced pursuant to this Order cannot be accessed directly by a Party and where the ESI data is maintained by a third-party, the Parties shall cooperate and seek to attempt to minimize any expense or burden associated with production of such ESI.

V.      **DESIGNATED ESI LIAISON**

Each Party shall designate an individual(s) to act as e-discovery liaison(s) for purposes of meeting, conferring, and attending court hearings on the subject ("Designated ESI Liaison"). The Designated ESI Liaison must:

A. be prepared to participate in e-discovery discussions and dispute resolution;

B. be knowledgeable about the Party's e-discovery efforts;

**C.** be, or have reasonable access to those who are, familiar with the Party's electronic systems and capabilities in order to explain those systems and answer relevant questions; and,

**D.** be, or have reasonable access to those who are, knowledgeable about the technical aspects of e-discovery, including electronic document storage, organization, and format issues, and relevant information retrieval technology, including search methodology.

**VI.**     **PAPER DISCOVERY**

Paper, or hard-copy, discovery is to be produced as specified in Exhibit B, which is found at Filing No. 50-2 herein.

Dated: June 5, 2019.

BY THE COURT:

s/ Susan M. Bazis
United States Magistrate Judge