IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| HCI DISTRIBUTION, INC., and ROCK RIVER MANUFACTURING, INC., <br><br>   Plaintiffs, <br><br> vs. <br><br> DOUGLAS J. PETERSON, Nebraska Attorney General; and TONY FULTON, Nebraska Tax Commissioner; <br><br>   Defendants. | 8:18CV173 <br><br> **ORDER** |

This matter is before the Court on Defendants' Motion to Compel and Motion for a Protective Order (Filing No. 85). For the reasons explained below, the motion will be granted, in part, as set out below.

## BACKGROUND

This action was filed on April 20, 2018. Plaintiffs HCI Distribution, Inc. ("HCID") and Rock River Manufacturing ("Rock River") (collectively, "Plaintiffs") seek a declaration of rights pursuant to 28 U.S.C. § 2201 and injunctive relief pursuant to 28 U.S.C. § 2202 regarding the enforcement of Nebraska's statutes regulating tobacco product manufacturing and distribution. Specifically, Plaintiffs, who claim to be tribal entities, seek to prevent Defendants from enforcing Nebraska's escrow and directory laws against them.

On March 22, 2019, Defendants served requests for production ("RFP") on HCID and Rock River. On May 22, 2019, Plaintiffs responded and objected to the RFPs. Following a meet and confer process, the parties were able to resolve Plaintiffs' objections to several of the RFPs, but the parties were unable to resolve Plaintiffs' objections to Defendants' RFP Nos. 11 (to HCID) and 13 (to Rock River). These RFPs request information regarding cigarette tax stamps. The parties were also unable to resolve Plaintiffs' objections to Defendants' RFP Nos. 14 (to HCID) and 16 (to Rock River). These requests seek information regarding tribal regulation.

The parties participated in a conference call with the Court to discuss the ongoing discovery dispute on October 16, 2020. Defendants were granted leave to file this motion.

**DISCUSSION**

Pursuant to Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Relevancy is broadly construed, and "[d]iscovery requests should be considered relevant if there is any possibility the information sought is relevant to any issue in the case and should ordinarily be allowed, unless it is clear the information sought can have no possible bearing on the subject matter of the action." Met-Pro Corp. v. Industrial Air Technology, Corp., No. 8:07CV262, 2009 WL 553017, *3 (D. Neb. Mar. 4, 2009). "The proponent of discovery must make a threshold showing of relevance before production of information, which does not reasonably bear on the issues in the case, is required." Id. "Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case." Id.

Defendants request that Plaintiffs be compelled to produce documents responsive to RFP Nos. 11 and 13 regarding the purchase and application of cigarette tax stamps, and RFP Nos. 14 and 16 regarding tribal regulation of cigarettes.[1] RFP No. 11 to HCID requests "[a]ll documents related to HCID's purchase and application of cigarette tax stamps from January 1, 2014 to the present." RFP No. 13 to Rock River similarly requests "[a]ll documents related to [Rock River's] purchase and application of cigarette tax stamps from January 1, 2014 to present." RFP No. 14 to HCID seeks "[a]ll documents related to HCID's communications with, requests to, authorizations by, denials from, or prohibitions by any tribal governmental entity located within

---

[1] Defendants' motion also requests that the Court enter a protective order preventing Defendants from having to search for and produce documents as requested in Plaintiffs' RFP No. 13. Plaintiffs have since withdrawn this discovery request. (Filing No. 88.) Therefore, Defendants' request for a protective order will not be addressed in this Order. Moreover, Defendants' motion requests that this Court compel Plaintiffs to produce documents responsive to RFP Nos. 9, 10, 12, and 13 to HCID and RFP Nos. 9-12, 14, and 15 to Rock River. Defendants claim Plaintiffs previously agreed to respond to these requests using negotiated search terms but have failed to produce the documents. Plaintiffs do not appear to dispute that they agreed to respond to the requests and have indicated they are currently in the process of reviewing thousands of documents for production to Defendants. The Court assumes that these documents have been produced to Defendants at this point. If they have not, the parties shall confer regarding the production of documents responsive to RFP Nos. 9, 10, 12, and 13 to HCID and RFP Nos. 9-12, 14, and 15 to Rock River. If a further dispute arises as to the production of these items, the parties shall contact the Court to schedule a telephone conference.

Nebraska pertaining to the manufacture, distribution, transport, wholesale, stamping, possession, sale, or retail of cigarettes." RFP No. 16 to Rock River likewise seeks "[a]ll documents related to [Rock River's] communications with, requests to, authorizations by, denials from, or prohibitions by any tribal governmental entity located within Nebraska pertaining to the manufacture, distribution, transport, wholesale, stamping, possession, sale, or retail of cigarettes."

Defendants argue that the issue of the application and enforceability of the escrow and directory laws will be subject to review pursuant to the interest balancing test set out in *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136 (1980)[2] and, therefore, the Court needs full discovery to evaluate whether the escrow and directory laws "infringe on the right of reservation Indians to make their own laws and be ruled by them." *HCI Distribution, Inc. v. Peterson*, 360 F. Supp.3d 910, 922 (D. Neb. 2018) (stating "even if the MSA laws better fit the paradigm of a regulatory scheme, the laws would be subject to review pursuant to the *Bracker* interest-balancing test"). In support of their argument for broad discovery, Defendants point to a previous order in this case in which the Court stated that it anticipated "a full evidentiary record will be required before it may undertake a complete resolution of the parties' claims and contentions pursuant to the Indian Commerce Clause." *Id*.

Plaintiffs argue the discovery requests infringe upon their inherent tribal sovereignty and, in addition, burden other tribal entities' sovereignty. Plaintiffs contend the business records sought have nothing to do with the issue presented in this litigation, *i.e.*, whether the State of Nebraska can require the Plaintiffs to comply with its escrow and directory laws. Plaintiffs argue Defendants are using the discovery process as a fishing expedition to obtain information to potentially use in a subsequent enforcement action. Plaintiffs maintain they should only have to produce records to determine whether they have complied with Nebraska's tax and escrow laws if the Court first concludes they must comply with those laws. Plaintiffs acknowledge that a protective order

---

[2] "When a State seeks to impose a nondiscriminatory tax on the actions of nonmembers on tribal land, its authority is not categorically limited. Instead, the Supreme Court applies a flexible analysis to determine whether state taxation of nonmembers on Indian land is proper, often called the *Bracker* balancing test." *Flandreau Santee Sioux Tribe v. Noem*, 938 F.3d 928, 932 (8th Cir. 2019). "Each case requires a particularized examination of the relevant state, federal, and tribal interests." *Id*. (internal quotation omitted).

3

prohibiting the disclosure of confidential information has been entered in this case but argue Defendants will not "magically forget" the information learned in this case if a subsequent enforcement action is brought.

Plaintiffs propose that rather than directly responding to Defendants' requests, they provide a detailed outline of their business model, with aggregate figures for sales in the following categories: (1) on tribal land sales to tribal members; (2) on tribal land sales to non-tribal members; and (3) off tribal land sales to non-tribal members. Plaintiffs contend this outline will allow the Court to determine whether and how Nebraska may impose its escrow and directory laws upon each of those types of sales. Plaintiffs maintain that because the issues involved in this litigation are purely legal in nature, this procedure would be proportionate, less expense, less burdensome, and respectful of tribal sovereignty.

### 1.     RFP No. 11 (HCID) and RFP No. 13 (Rock River)

Defendants argue that a dispute concerning the applicability of the escrow and directory laws requires an examination of cigarette tax compliance and tax stamping. Defendants maintain this is true because only cigarettes that are "units sold" must comply with Nebraska's escrow and directory laws. "Units sold" are defined by Nebraska law as cigarettes sold "in packs required to bear a stamp." Neb. Rev. Stat. § 69-2702. Defendants maintain that because Nebraska has an interest in ensuring compliance with its tax laws, "[a]n understanding of Plaintiffs' stamp purchases, stamp applications, and the cigarettes sold by Plaintiffs (with or without those stamps) . . . is integral to an understanding of when and how the escrow and directory laws may or may not apply to Plaintiffs." (Filing No. 86.) *See HCI Distribution, Inc. v. Peterson*, 360 F. Supp.3d 919-20 (D. Neb. 2018) ("[A] state has a valid interest in ensuring compliance with lawful taxes that might otherwise be evaded"). Defendants contend this information is necessary for the Court to properly perform the *Bracker* interest balancing test.

Plaintiffs maintain the requests are overly broad and burdensome. Plaintiffs surmise that the requests seek to determine whether Plaintiffs purchased or applied for tax stamps. Plaintiffs claim that rather than request all records related to any such purchase or application, Defendants could simply ask this question in an interrogatory or during a deposition. Plaintiffs complain that Defendants have requested all records related to tax stamp purchases or applications without first

4

establishing that Plaintiffs made any such purchases or applications. Plaintiffs agree with Defendants that an understanding of Plaintiffs' stamp purchases, stamp applications, and the cigarettes sold by Plaintiffs could be useful in determining when and how the escrow and directory laws may or may not apply to Plaintiffs. However, Plaintiffs contend that many of the records sought through these discovery requests would not further that understanding. As an example, Plaintiffs contend an interrogatory about whether, when, and from whom Plaintiffs applied for or purchased tobacco stamps would be reasonable, but that a request for all documents, including all communications between Plaintiffs and anyone else, regarding tobacco stamps is not.

The Court agrees with the parties that information regarding Plaintiffs' stamp purchases, stamp applications, and cigarettes sold by Plaintiffs is relevant to the issues in this case. However, the Court finds the wording of these RFPs overly broad, as they seek "[a]ll documents related to" without any specificity. The Court will not limit Defendants to simply seeking this information through interrogatories or a deposition as suggested by Plaintiffs or by settling for a summary of information as also proposed by Plaintiffs. Rather, the Court will allow Defendants to revise these discovery requests to identify the precise information sought—just for example, actual stamp applications or written communications between certain types of entities or people regarding stamp applications, etc. The use of sub-parts in drafting may be necessary for Defendants to achieve the appropriate level of specificity. The parties are advised that the Court will not entertain objections based *only* on the number of sub-parts used by Defendants in attempting to gain the information sought.

 2. **RFP No. 14 to HCID and RFP No. 16 to Rock River**

Defendants argue documents related to communications Plaintiffs had with other tribal governmental entities are relevant because Plaintiffs' Complaint alleges Plaintiffs have complied with tribal regulations. For example, the Complaint alleges "HCID uses all diligence in ascertaining and complying with applicable laws" and HCID ships tobacco products "in accordance with applicable tribal law." (Filing No. 1.) The Complaint further alleges that the Winnebago Tribe "imposes a tax on the sale of cigarettes within its jurisdiction." (Filing No. 1.) Defendants argue these allegations make Plaintiffs communications with tribal government entities regarding the manufacture, distribution, transport, wholesale, stamping, possession, sale, or retail of cigarettes relevant to this case. Plaintiffs contend, however, that these requests burden their

5

right to tribal sovereignty, as well as the rights of other tribal entities. Plaintiffs also argue that these requests are designed to obtain business records for use in a potential enforcement action.

The Court finds the information sought relevant to the issues involved in this case. Plaintiffs allege in the Complaint that they comply with tribal laws and that the Winnebago Tribe taxes sales of cigarettes within its jurisdiction. Defendants are entitled to discovery related to these allegations. Plaintiffs have not pointed the Court to any authority substantiating their position that discovery should be limited based on purported tribal affiliation, particularly in a case in which the entity claiming to possess tribal sovereignty filed the lawsuit. Further, there has been no showing that responding to the requests would be overly burdensome. The Court appreciates Plaintiffs' concerns regarding misuse of the requested information. However, a protective order is in place and sanctions exist for violations of such orders. The Court has no reason to doubt that the parties and counsel will abide by the terms of the Protective Order.

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Compel and Motion for a Protective Order ([Filing No. 85](#)) is granted, in part, as set out above. Plaintiffs shall respond to Interrogatory Nos. 14 and 16 by May 7, 2021. Defendants may revise and re-serve Interrogatory Nos. 11 and 13 in accordance with guidance set out in this Order. The revised requests shall be served no later than May 7, 2021.

A telephone status conference will be held on April 23, 2021 at 2:00 p.m. before Magistrate Judge Susan M. Bazis. The remaining case progression deadlines will be set during the status conference. The parties shall submit joint proposed case progression deadlines to bazis@ned.uscourts.gov by 12:00 p.m. on April 21, 2021. Case conference instructions are found at Filing No. 38.

Dated this 7th day of April, 2021.

BY THE COURT:

s/ Susan M. Bazis
United States Magistrate Judge